UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

25-20005-CR-BLOOM/ELFENBEIN

Case No. _____

18 U.S.C. § 371

UNITED STATES OF AMERICA

vs.

**GILDA BETH ROSENBERG,**
 a/k/a "Gilda Rosemberg Percezek,"

         **Defendant.**
_____/

FILED BY ____mp____ D.C.

Jan 8, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise noted:

1.    **GILDA BETH ROSENBERG, a/k/a "Gilda Rosemberg Percezek"** ("**ROSENBERG**"), was born in Colombia and was a United States citizen from birth. From 1983 onward, **ROSENBERG** resided in the Southern District of Florida.

2.    Relative 1 was a family member of **ROSENBERG's** who was born in Colombia and became a naturalized United States citizen in or about December 1993. Relative 1 periodically resided in the Southern District of Florida from approximately 1999 to approximately 2018, and currently resides in Colombia.

3.    Relative 2 was a family member of **ROSENBERG's** who was born in Colombia and was a United States citizen from birth. Relative 2 graduated from college in the United States in 1982 and, at various times up through 2013, resided in the Southern District of Florida. In 2017, Relative 2 renounced his United States citizenship and became a citizen of Spain. Relative 2 currently resides in Milan, Italy.

4. Attorney 1 was a business and tax attorney practicing in the Southern District of Florida whose practice focused on high-net-worth individuals with cross-border family and business structures.

5. Return Preparer 1 was a tax return preparer who operated a business in Coral Gables, Florida. Return Preparer 1 died in 2020.

6. The Internal Revenue Service ("IRS") was a bureau of the United States Department of the Treasury responsible for administering the federal tax laws of the United States and collecting taxes owed to the United States.

7. United States taxpayers who had income in excess of a certain amount were obligated to file an individual income tax return ("Form 1040") with the IRS. On said return, United States taxpayers were obligated to report their worldwide income. Additionally, citizens and residents of the United States who had a financial interest in, or signature or other authority over, a financial account in a foreign country were required to disclose the existence of such account on Schedule B, Part III of their individual income tax return.

8. Pursuant to Title 31, Code of Federal Regulations, Sections 103.24, 103.27(c), 103.27(d) and 103.59(b), recodified at Title 31, Code of Federal Regulations, Section 1010.350, citizens and residents of the United States who had a financial interest in, or signature or other authority over, one or more bank, securities and other financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year were required to report such a relationship to the Financial Crimes Enforcement Network, a bureau of the United States Department of the Treasury, on a Report of Foreign Bank and Financial Accounts on FinCEN Report 114 (formerly TD F 90.22-1) (an "FBAR"). Up through the 2015 calendar year,

the FBAR was due by June 30 of the next year. For the 2016 calendar year and going forward, the FBAR was due on April 15 of the following year with an automatic extension to October 15.

### Conspiracy to Defraud the United States and to Commit Offenses Against the United States
### (18 U.S.C § 371)

9. From in or around 2009 through 2022, in the Southern District of Florida and elsewhere, the defendant,

**GILDA BETH ROSENBERG,**
a/k/a "Gilda Rosemberg Percezek,"

did knowingly and willfully conspire, confederate, and agree together with Relative 1, Relative 2, and others known and unknown to the United States Attorney, to defraud the United States and its agencies by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of Treasury, in the ascertainment, computation, assessment, and collection of the revenue, that is, the federal income taxes of **ROSENBERG**, Relative 1, and, up through 2017, Relative 2, and to commit certain offenses against the United States, that is:

a. to willfully attempt to evade and defeat income tax due and owing to the United States of America, by **ROSENBERG**, Relative 1, and Relative 2, for the calendar years 2010 through 2017 and by the Defendant and Relative 1 for the calendar years 2018 through 2022, by committing the following affirmative acts, among others: Concealing assets and income in foreign financial accounts, and filing false individual income tax returns, in violation of Title 26, United States Code, Section 7201; and

b. to knowingly and willfully fail to file with the Financial Crimes Enforcement Network, a bureau of the United States Department of the Treasury, an FBAR disclosing that **ROSENBERG** had a financial interest in, and signature and other authority over, a bank, securities

3

and other financial accounts in a foreign country, to wit: financial and bank accounts in Switzerland which accounts had an aggregate value of more than $10,000 during the years 2010 through 2021, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31 Code of Federal Regulations, Sections 1010.350, 1010.306(c)-(d) & 1010.840(b) (former Title 31 Code of Federal Regulations, Sections 103.24, 103.27(c)-(d) and 103.59(b)); all in violation of Title 31, United States Code, Sections 5314 and 5322(b).

## PURPOSE OF THE CONSPIRACY

10. It was the purpose of the conspiracy for **ROSENBERG** and her co-conspirators to defraud the United States and unjustly enrich themselves by, among other things, concealing tens of millions of dollars in undeclared foreign financial accounts, filing false tax returns, and evading tax on the unreported income.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among other things, the following:

11. From 2010 through 2017, **ROSENBERG**, Relative 1 and Relative 2 collectively and individually owned over $90 million in assets held in foreign financial accounts located in Andorra, Israel, Spain, and Switzerland. Between 2010 and 2017, **ROSENBERG**, Relative 1 and Relative 2 agreed to conceal those assets from IRS by failing to file FBARs reporting their respective ownership of the foreign financial accounts and filing individual income tax returns that falsely and fraudulently failed to report income generated by the assets in the undeclared foreign accounts.

12. At the instruction of Relative 2, **ROSENBERG** opened an account at Union Bancaire Privée Bank in Switzerland in 2010, which was assigned the code name "Meninas." Each year between 2011 and 2017, the Meninas account had a balance in excess of $10,000. The assets

in the Meninas account generated the following approximate amounts of income in the following years:

| YEAR | INCOME |
|---|---|
| 2011 | $83,862.50 |
| 2012 | $83,862.50 |
| 2013 | $63,777.71 |
| 2014 | $51,302.52 |
| 2015 | $44,098.59 |
| 2016 | $11,169.25 |
| 2017 | $503.08 |

13. In 2017, **ROSENBERG**, Relative 1, and Relative 2 agreed to divide the family's assets between **ROSENBERG** and Relative 2. **ROSENBERG**, Relative 1, and Relative 2 agreed that:

   a. **ROSENBERG** would receive agricultural land in Colombia, operating companies in Colombia and Ecuador, real property in Colombia, a condominium in Florida owned by Relative 1, and approximately $15 million of the assets in the family's undeclared foreign financial accounts;

   b. Relative 1 would retain the right during that individual's lifetime to the income generated by the agricultural land in Colombia, operating companies in Colombia and Ecuador, and real property in Colombia;

   c. **ROSENBERG** and Relative 2 would place $1 million in a foreign financial account for Relative 1's needs; and

5

      d. Relative 2 would receive the remainder of the assets in the family's foreign financial accounts.

14. As part of the plan to divide the assets, Relative 2 proposed to renounce his U.S. citizenship as a means to falsely and fraudulently legitimize the assets and income that had not been reported to the IRS. To that end, Relative 2 renounced his United States citizenship but failed to file the IRS Form 8854, Initial and Annual Expatriation Statement, which is required to be filed with the IRS when a U.S. citizen renounces their citizenship. On that Form, Relative 2 was obligated to report the income tax he owed on the net unrealized gain in his property as if the property had been sold for its fair market value on the day before his expatriation date.

15. As a further part of the scheme to hide the family assets from the IRS, **ROSENBERG** and Relative 1 agreed to sign documents in which they purported to "donate" the assets in the undeclared accounts to Relative 2.

16. Between 2017 and 2022, Relative 2 held approximately $15 million in foreign financial accounts for the benefit of **ROSENBERG**. Relative 2 periodically transmitted cash to **ROSENBERG** usually via third parties in response to **ROSENBERG's** requests. Relative 2 did so in a manner to conceal the origin of the funds, as Relative 2 expressed his concern the IRS would discover the family's undeclared assets and that the IRS would discover that he had failed to file a Form 8854.

17. At the direction of Relative 1, and in order to conceal **ROSENBERG's** financial interest in the undeclared offshore assets, Relative 2 placed approximately $12 million of **ROSENBERG's** assets into an "insurance wrapper" account held at a Swiss bank. An "insurance wrapper" account is an investment account around which was wrapped a life insurance policy.

Relative 2 caused himself to be identified as the owner of the insurance policy, Relative 1 as the insured, and **ROSENBERG** as the beneficiary.

18. In order to conceal the family's undeclared assets and to hide her interests in the assets held offshore by Relative 2, **ROSENBERG** willfully failed to file an FBAR for calendar years 2010 through 2021.

19. In order to conceal the family's undeclared assets and to hide her interests in the assets held offshore by Relative 2, **ROSENBERG** willfully filed income tax returns for calendar years 2010 through 2017 on which she:

   a. Fraudulently underreported her interest income on Line 8a of the Forms 1040;

   b. Fraudulently underreported her total income on Line 22 of the Forms 1040; and

   c. Falsely answered "No" to question 7(a) on Schedule B, Part III that asked whether she had a financial interest in a foreign financial account.

## OVERT ACTS

In furtherance of the conspiracy, and to achieve the purpose and objects thereof, at least one of the conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. On or about September 17, 2017, Relative 2 sent an email to Return Preparer 1 in the Southern District of Florida who prepared income tax returns for Relative 1, Relative 2, and **ROSENBERG**, attached to which was a document that contained income and expense information to be reported on the 2016 Forms 1040 to be filed for Relative 1 and Relative 2, but which did not

include the interest and dividend income that they each earned from the assets in their foreign financial accounts in Andorra, Israel and Switzerland.

2. On or about October 12, 2018, **ROSENBERG** caused her return preparer to transmit from the Southern District of Florida to the IRS a 2017 Form 1040 on which she fraudulently underreported her interest income and falsely answered "No" to Question 7 on Schedule B, Part III, which asked whether she had an interest in a foreign financial account.

3. On or about June 11, 2019, **ROSENBERG** caused her return preparer to transmit from the Southern District of Florida to the IRS a 2018 Form 1040 on which she fraudulently underreported her interest income and falsely answered "No" to Question 7 on Schedule B, Part III, which asked whether she had an interest in a foreign financial account.

4. On or about August 20, 2019, Relative 2 sent a text message to **ROSENBERG** in the Southern District of Florida stating, in Spanish: "Keep talking about this with third parties, and sooner or later you'll have to face the consequences."

5. On or about September 22, 2020, **ROSENBERG** caused her return preparer to transmit from the Southern District of Florida to the IRS a 2019 Form 1040 on which she fraudulently underreported her interest income and falsely answered "No" to Question 7 on Schedule B, Part III, which asked whether she had an interest in a foreign financial account.

6. On or about September 3, 2021, **ROSENBERG** caused her return preparer to transmit from the Southern District of Florida to the IRS a 2020 Form 1040 on which she fraudulently underreported her interest income and falsely answered "No" to Question 7 on Schedule B, Part III, which asked whether she had an interest in a foreign financial account.

All in violation of Title 18, United States Code, Section 371.

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY


_____
ANA MARIA MARTINEZ
ASSISTANT UNITED STATES ATTORNEY


STUART M. GOLDBERG, ACTING DEPUTY
ASSISTANT ATTORNEY GENERAL
FOR CRIMINAL MATTERS
TAX DIVISION, U. S. DEPARTMENT OF JUSTICE


_____
MARK F. DALY, SENIOR LITIGATION COUNSEL
STAN J. OKULA, SENIOR LITIGATION COUNSEL
MARISSA R. BRODNEY, TRIAL ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

GILDA BETH ROSENBERG,
a/k/a "Gilda Rosemberg Percezek,"
_____/
Defendant.

CASE NO.: 25-20005-CR-BLOOM/ELFENBEIN

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☒ Miami        ☐ Key West    ☐ FTP
☐ FTL          ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take  0  days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Mills Maynard)? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
ANA MARIA MARTINEZ
Assistant United States Attorney
FL Bar No.        0735167

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   **GILDA BETH ROSENBERG, a/k/a "Gilda Rosemberg Percezek"**

**Case No**: _____

Count #:  1

   Title 18, United States Code, Section 371

   Conspiracy to Defraud the United States and to Commit Offenses Against the United States
* **Max. Term of Imprisonment:**   5 Years
* **Mandatory Min. Term of Imprisonment (if applicable):**   N/A
* **Max. Supervised Release:**   3 Years
* **Max. Fine:**   $250,000 or twice the gross gain or loss resulting from the offense

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| Gilda Beth Rosenberg, a/k/a "Gilda Rosemberg Percezek," | ) ) ) | 25-20005-CR-BLOOM/ELFENBEIN |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*